IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

FIRST FEDERAL BANK OF THE MIDWEST,

                Plaintiff,                Case No. 3:10 CV 2360

-vs-

                                        MEMORANDUM OPINION

BRION R. BAITH, et al.,

                Defendant.

KATZ, J.

This matter is before the Court on the motion for summary judgement (Doc. 24) filed by First Federal Bank of the Midwest ("Plaintiff"). Defendants Karen Baith, Brion Baith, and Lisa Baith have filed a response (Doc. 25), to which Plaintiff has filed a reply (Doc. 26). For the following reasons, the Court hereby grants the motion.

**I. Background**

On June 30, 2005, Defendants Brion, Lisa, Karen, and Robert Baith executed a Promissory Note with Plaintiff for $748,000.00. (Doc. 24 at 3); (Doc. 25 at 2). The purpose of the loan was to finance the apartment complex referred to in this litigation by its location on Arlington Avenue. (Doc. 25 at 2). Karen Baith claims that on or about October 26, 2007, she transferred all of her interest in the Arlington Avenue properties to Brion and Lisa Baith. (Doc. 25-2). On November 23, 2009, a Change in Terms Agreement was signed by Karen, Lisa, and Brion Baith, which removed the late Robert Baith from the loan and also set up interest-only payments for six months, as well as a cross-collateralization plan. (Doc. 26-1).

On September 15, 2010, Plaintiff commenced foreclosure proceedings against Defendants in the Court of Common Pleas in Lucas County, OH. (Doc. 1-1). One month later, this case was removed to this United States District Court for the Northern District of Ohio. (Doc. 1). Plaintiff

alleges that Defendants owe $408,182.58 in principal, based upon the terms of the 2005 Promissory Note. (Doc. 24). Defendant Karen Baith claims that Plaintiff should be estopped from denying her a change in status as a primary obligor. (Doc. 25 at 4). Karen Baith has also filed a Counterclaim against Plaintiff, wherein she seeks compensatory damages, a declaration that she is no longer responsible for the note on the Arlington Avenue property, and attorney fees in excess of $25,000. (Doc. 10 at 8).

## II. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply

[to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### III. Discussion

Plaintiff has filed this motion for summary judgment on Count Five of the nine count Complaint and on Karen Baith's Counterclaim. (Doc. 24); (Doc. 10). Count Five alleges breach of the 2005 Promissory Note against Karen, Brion, and Lisa Baith. (Doc. 1-1). The remaining counts of the Complaint have been eliminated or dismissed. (Doc. 24 at 2).[1] Plaintiff maintains that Karen Baith's Counterclaim must be dismissed because she has not presented any written evidence in support. (Doc. 24 at 4). Plaintiff has submitted the following evidence in support of its claim that Brion, Karen and Lisa Baith executed the 2005 Promissory Note and that they breached the contract by nonpayment: the affidavit of John H. Bick, Senior Vice President of Asset Quality for First Federal Bank of the Midwest (Doc. 24-1); the affidavit of Craig Curtis, Vice President of Commercial Lending for First Federal Bank (Doc. 26-3); correspondence between Craig Curtis and Karen, Brion, and Lisa Baith (Doc. 26-3); a memorandum from Craig Curtis to Karen Baith (Doc. 26-2); and a copy of the Change in Terms Agreement executed on November 23, 2009 (Doc. 26-1).

Defendant Karen Baith maintains that Plaintiff should be estopped from denying a change in her status as a primary obligor and also estopped from seeking recourse against her for any alleged deficiency with respect to the 2005 Promissory Note. (Doc. 25 at 4). To support her claim, she has submitted her own affidavit, the affidavit of Cheryl A. Zimmerman, and the aforementioned memorandum from Craig Curtis to Karen Baith, which refers to Karen Baith as a

---

[1] Plaintiff has failed to comply with Local Rule 10.1, which requires documents that are presented for filing in this Court to be "numbered consecutively." For purposes of this Memorandum Opinion, the Court will use the ECF Docket Number page count to refer to Plaintiff's memorandum in support of its motion for summary judgment (Doc. 24).

4

"guarantor." (Doc. 25-1); (Doc. 25-2). It is undisputed that Michigan law applies to the claims involving the promissory note. *See* (Doc. 24 at 4).

Initially, the Court grants the motion for summary judgement against Lisa and Brion Baith, as they have failed to respond to Plaintiff's motion. *See Celotex*, 477 U.S. at 324. Therefore, the Court finds Lisa and Brion Baith liable to the Plaintiff in the amount of $409,182.58 plus interest and expenses accruing on the principal of the 2005 Promissory Note identified by Loan No. 661236348 since May 16, 2011.

It is also clear that Karen Baith was not completely removed from liability with respect to the 2005 Promissory Note. Oral promises to modify a loan are barred by the statute of frauds, and Karen Baith has not submitted written evidence to support her claim that her loan was modified to remove her from all liability. *See* MCL § 566.132. The Michigan Court of Appeals explains MCL § 566.132 as follows:

> MCL 566.132(2); MSA 26.922(2) expressly states that 'an action shall not be brought against a financial institution to enforce [a promise or commitment to waive a provision of a loan] unless the promise or commitment is in writing and signed with an authorized signature by the financial institution.' This language is unambiguous. It plainly states that a party is precluded from bringing a claim--no matter its label--against a financial institution to enforce the terms of an oral promise to waive a loan provision.

*Crown Tech. Park v. D&N Bank, F.S.B.*, 619 N.W.2d 66, 72 (Mich. Ct. App. 2000). Accordingly, Karen Baith's counterclaim seeking a declaration that she is not liable under the 2005 Promissory Note is unsupported and must be dismissed.

Karen Baith raises the affirmative defense of promissory estoppel, claiming the bank should be estopped from making her a primary obligor on the note and from claiming recourse for unjustified impairment of collateral, contending that she is not liable for defaulting on the 2005

Promissory Note. (Doc. 25 at 4). Upon review of the submitted evidence, and resolving inferences in favor of the nonmovant, the Court finds Karen Baith has not shown a valid claim for promissory estoppel. Therefore, her arguments are insufficient to overcome a motion for summary judgment.

Promissory estoppel consists of four elements: 1) a promise; 2) that the promisor should reasonably expect to induce the promisee into action of a definite and substantial character; 3) which in fact produced reliance or forbearance of that nature; 4) in circumstances such that the promise must be enforced if injustice is to be avoided. *McMath v. Ford Motor Co.*, 259 N.W.2d 140, 142 (Mich. Ct. App. 1977). "A promise is a manifestation of intention to act or refrain from acting in a specified manner, made in a way that would justify a promisee in understanding that a commitment had been made." *Schmidt v Bretzlaff*, 528 N.W.2d 760, 762 (Mich. Ct. App. 1995). Moreover, "reliance is reasonable only if it is induced by an actual promise." *State Bank of Standish v Curry*, 500 N.W.2d 104, 107 (Mich. 1993)). The Michigan Supreme Court states:

> Variables such as the nature of the relationship between the parties, the clarity of the representation, as well as the circumstances surrounding the making of the representation, are important to the determination of whether the manifestation rises to the level of a promise. Both traditional contract and promissory estoppel theories of obligation use an objective standard to ascertain whether a voluntary commitment has been made. To determine the existence and scope of a promise, we look to the words and actions of the transaction as well as the nature of the relationship between the parties and the circumstances surrounding their actions.

*State Bank of Standish*, 500 N.W.2d at 108-09.

In her affidavit, Defendant Karen Baith claims that Plaintiff, "at some point after 2005 and at the latest in December of 2009 made a promise" that Karen Baith would no longer be primarily liable on the 2005 Promissory Note. (Doc. 25 at 5). She claims that this alleged promise is

6

evidenced by the memorandum sent to her from Craig Curtis, in which he referred to her as a "guarantor."  *Id*.  In context, however, this memorandum cannot reasonably be interpreted as a promise made to Karen Baith that would remove her as a primary borrower on the 2005 Promissory Note.  Therefore, without a promise, there cannot be a valid claim for promissory estoppel.

Karen Baith had signed at least two official documents with the bank (the Promissory Note and the Change in Terms Agreement).  (Doc. 24-2); (Doc. 26-1).  Karen Baith could not have reasonably believed that she was removed from the loan, especially where she had signed a Change in Terms Agreement which removed her late husband as a primary borrower.  (Doc. 26-1).  She went through the process to remove her husband, and should not have assumed that she too had been removed.  Moreover, Craig Curtis could not have reasonably intended to remove Karen Baith as a primary borrower by way of a casual memorandum, especially where his previous correspondence, sent just a month earlier and days before Karen signed the Change in Terms Agreement, indicated that he was working carefully with Brion, Lisa, and Karen to adjust their loan in order to help the three of them through a "tight cash flow situatio[n.]"  (Doc. 26-3); *See Schmidt*, 528 N.W.2d 760 at 762 (1995).

Moreover,  Karen Baith's affidavit submitted in opposition to summary judgment contradicts the undisputed evidence in this case.  She alleges, "I relied upon the oral representations and written affirmation [(25-2)] of the details of the cross-collateralization agreement when I agreed to enter into the cross-collateralization."  (Doc. 25-2 at ¶7).  However, the Change in Terms Agreement is undisputably dated November 23, 2009, several days before Karen Baith could have received the December 5, 2009 memorandum from Craig Curtis.  (Doc.

7

26-1); (Doc. 25-2). Craig Curtis' inadvertent reference to her as a guarantor, in the context of the entire course of dealings between the parties, does not rise to the level of an "actual promise." *See State Bank of Standish*, *supra*. Furthermore, Karen Baith's alleged transfer of the Arlington Avenue property to Lisa and Brion Baith, even if true, does not remove her from liability as a primary borrower on the original note. The evidence put forth by Plaintiff shows Karen Baith's liability as a primary obligor on the 2005 Promissory Note, and no reasonable juror could find otherwise. *See* (Doc. 25-2). Therefore, the Court enters judgement against Karen Baith in the amount of $409,182.58 based upon the Promissory Note identified by Loan No. 661236348, as well as interest on the principal of that loan accruing together with cost and expenses since May 16, 2011.

Finally, in their memorandum in support of summary judgment, Defendants anticipated that Plaintiff would argue waiver of impairment of collateral. Plaintiff has not made such an argument in its motion for summary judgment. Therefore, the Court declines to address the issue.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment (Doc. 24) is granted.

IT IS SO ORDERED.

    s/ *David A. Katz*
    DAVID A. KATZ
    U. S. DISTRICT JUDGE